

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOMBARDIER CAPITAL INC., a
Massachusetts Company,

                       Plaintiff,

-against-

UPTONGROVE LIMITED, an Irish Company;
CALEZAR LIMITED, an Irish Company;
ALBERTO ANGEL ABED SCHEKAIBAN;
and JAIME EDUARDO ROSS CASTILLO,
Individually,

                       Defendants.

Case No. _____

**COMPLAINT**

RECEIVED
FEB 15 2005
U.S.D.C. S.D.N.Y.
CASHIERS

    Plaintiff BOMBARDIER CAPITAL INC. ("BCI"), a corporation incorporated under the laws of the State of Massachusetts, by and through its undersigned counsel, sues Defendants UPTONGROVE LIMITED, a corporation incorporated under the laws of Ireland ("UPTONGROVE"), CALEZAR LIMITED, a corporation incorporated under the laws of Ireland ("CALEZAR"), ALBERTO ANGEL ABED SCHEKAIBAN, a citizen of Mexico ("ABED"), and JAIME EDUARDO ROSS CASTILLO, a citizen of Mexico ("CASTILLO"), and alleges:

### Jurisdiction and Venue

1.     Jurisdiction is appropriate in Federal Court pursuant to 28 U.S.C. §1332 because (1) the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and (2) the controversy is between the citizens of different states and the citizen of a State and the citizens of foreign states.

2.     Plaintiff BCI is a corporation incorporated under the laws of the State of Massachusetts having its principal place of business in the State of Vermont.

3.     Defendants UPTONGROVE and CALEZAR are corporations incorporated under the laws of the country of Ireland, with their principal place of business in Ireland.

4.　　Defendants ABED and CASTILLO upon information and belief, are citizens of the country of Mexico.

5.　　Jurisdiction is appropriate pursuant to 28 U.S.C. §1332(a)(3) over Defendants UPTONGROVE, CALEZAR, ABED, and CASTILLO, as UPTONGROVE, CALEZAR, ABED, and CASTILLO are citizens of foreign states.

6.　　Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1391(d) because Defendants UPTONGROVE, CALEZAR, ABED, AND CASTILLO, are aliens, and further, pursuant to the forum selection clause contained in the documents which are the subject of this suit.

## Factual Background

7.　　On or about August 2001, Learjet, Inc., a Delaware Corporation, and UPTONGROVE entered into that certain Airplane Purchase Agreement (the "Purchase Agreement"), for purchase of a Learjet model 31A-224 (the "Aircraft"). A true and correct copy of the Purchase Agreement is attached hereto and incorporated herein by reference as **EXHIBIT "A"**.

8.　　As part of the same transaction as entering into the Purchase Agreement, UPTONGROVE and Wilmington Trust Company, as Owner Trustee ("WTC"), entered into that certain Trust Agreement dated August 8, 2001 creating a Trust, the *res* of which, was to consist of the Aircraft (the "Trust Agreement"). A true and correct copy of the Trust Agreement is attached hereto and incorporated herein by reference as **EXHIBIT "B"**.

9.　　To accomplish that end, UPTONGROVE and WTC entered into that certain Airplane Purchase Agreement Assignment dated on or about August 2001, indicating therein WTC's acquisition of UPTONGROVE's rights in the Airplane Purchase Agreement and Aircraft (the "Uptongrove Assignment"). A true and correct copy of the Uptongrove Assignment is attached hereto and incorporated herein by reference as **EXHIBIT "C"**.

Case 1:05-cv-02148-RJS   Document 1   Filed 02/15/05   Page 3 of 6

10. WTC's purpose in acquiring UPTONGROVE's interest in the Purchase Agreement and the Aircraft, as reflected in the Uptongrove Assignment, was to permit WTC to assign its rights therein to BCI, so that BCI could lease the Aircraft to UPTONGROVE.

11. To accomplish that end, WTC and BCI entered into that certain Airplane Purchase Agreement Assignment dated on or about August 2001, wherein WTC assigned its interest in the Purchase Agreement and Aircraft to BCI (the "WTC Assignment"). A true and correct copy of the WTC Assignment is attached hereto and incorporated herein by reference as **EXHIBIT "D"**.

12. In connection therewith, BCI, as lessor, WTC, as lessee and UPTONGROVE, entered into that certain Aircraft Lease Agreement dated on or about August 2001 (the "Lease Agreement"). A true and correct copy of the Lease Agreement is attached hereto and incorporated herein by reference as **EXHIBIT "E"**.

13. To guarantee and ensure performance of WTC's and UPTONGROVE's obligations under the Lease Agreement and related documents, CALEZAR, ABED, and CASTILLO executed and delivered to BCI that certain Guaranty dated on or about August 2001 (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto and incorporated herein by reference as **EXHIBIT "F"**.

14. In connection with the foregoing documents, and to set forth the terms of UPTONGROVE's right to operate the Aircraft, UPTONGROVE and WTC entered into that certain Aircraft Operating Agreement dated on or about August 2001 (the "Operating Agreement"). A true and correct copy of the Operating Agreement is attached hereto and incorporated herein by reference as **EXHIBIT "G"**.

### The Obligations & Defaults

15.   The Aircraft Lease Agreement states that "UPTONGROVE has an interest in this Lease and will be bound by the duties and obligations of Lessee under this Lease". A primary obligation of the Aircraft Lease Agreement is to make the scheduled rental payments to BCI.

16.   Additionally, pursuant to paragraph 5 of the Operating Agreement, UPTONGROVE is responsible for payment of all costs and charges incurred in connection with possession, such payments to be made directly to the person to whom such payments are due, to wit, BCI.

17.   UPTONGROVE has defaulted under the Lease Agreement and Operating Agreement, and ABED, CASTILLO, and CALEZAR have defaulted under the Guaranty, by virtue of their respective failure to make the rental payment due on October 19, 2002 and all subsequent payments.

18.   As a result of the foregoing defaults, on November 22, 2004, BCI made demand on UPTONGROVE, ABED, CASTILLO, and CALEZAR for immediate payment of the accrued and unpaid lease payments, together with accrued interest and late fees, and all other expenses incurred or to be incurred by BCI prior to the time of payment in full of the balance due under the Lease Agreement (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto and incorporated herein by reference as **EXHIBIT "H"**.

19.   Despite demand, no payment has been received. Defendants UPTONGROVE, CALEZAR, ABED and CASTILLO, jointly and severally, owe Plaintiff BCI, the sum of $3,868,754.42, plus interest and late fees thereon, together with all attorney's fees and costs incurred in connection with the defaults, which fees and costs are the responsibility of Defendants UPTONGROVE, CALEZAR, ABED, and CASTILLO, under the subject documents.

20. BCI has retained the undersigned counsel to represent it in this matter and is obligated to pay them a reasonable fee.

21. All conditions precedent to this action have occurred or have been waived.

22. BCI is the current owner and holder of the subject documents.

## Count I

### Breach of Lease Agreement & Operating Agreement – UPTONGROVE

23. BCI repeats the allegations of paragraphs 1 through 22 as if set forth fully herein. By virtue of the foregoing, Plaintiff BCI demands judgment for damages against Defendant UPTONGROVE in the amount of $3,868,754.42, together with interest thereon, late charges, and attorney's fees and costs, and such and further relief as the Court may deem necessary and proper.

## Count II

### Breach of Guaranty – CALEZAR, ABED, CASTILLO

24. BCI repeats the allegations of paragraphs 1 through 23 as if set forth fully herein. By virtue of the foregoing, Plaintiff BCI demands judgment for damages against Defendants CALEZAR, ABED, and CASTILLO in the amount of $3,868,754.42, together with interest thereon, late charges, and attorney's fees and costs, and such and further relief as the Court may deem necessary and proper.

WHEREFORE, BCI demands judgment on its Complaint against the defendants as follows:

a. on Count I against defendant UPTONGROVE, in an amount to be determined at trial, but in no event less than $3,868,754.42, together with interest thereon, late charges and all other sums as set forth in the operative documents;

b. on Count II against defendants CALEZAR, ABED, CASTILLO, in an amount to be determined at trial, but in no event less than $3,868,754.42, together with interest thereon, late charges and all other sums as set forth in the operative documents; and

c. for such other and further relief as this court may deem just and proper, together with the costs and disbursements, including reasonable attorneys' fees.

Dated: New York, New York
February 14, 2005

ABRAMS GARFINKEL MARGOLIS BERGSON, LLP

*Barry G. Margolis*
By:_____
Barry G. Margolis (BGM-1841)
237 West 35th Street
Fourth Floor
New York, NY 10001
(212) 201-1170
Attorneys for Plaintiff
Bombardier Capital Inc.

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.

*L. Geoffrey Young*
By:_____
L. Geoffrey Young
150 Second Avenue North, 17th Floor
St. Petersburg, FL 33701
(727) 895-1971
Attorneys for Plaintiff
*Awaiting Admission Pro Hac Vice*
Bombardier Capital Inc.